**Ricky Darnell JACKSON,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A04–9611–CR–466.

Court of Appeals of Indiana.

July 21, 1998.

Transfer Denied Sept. 22, 1998.

---

Jeff Schlesinger, Crown Point, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BAKER, Judge.

Appellant-defendant Ricky Darnell Jackson appeals his convictions for Murder,[1] a felony, two counts of Attempted Murder,[2] both Class A felonies, Robbery,[3] a Class A felony and Arson,[4] a Class B felony. Specifically, Jackson claims that the trial court erred in denying his motions for a mistrial and that he was improperly sentenced to consecutive terms of imprisonment.

### FACTS

The facts most favorable to the verdict reveal that on October 7, 1995, Jackson and Bruce Wright went to play cards at Donald Rothchild's house in Gary. After the card game, Jackson and Wright left the house and

---

1. IND. CODE § 35–42–1–1.

2. IND. CODE §§ 35–41–5–1; 35–42–1–1.

3. IND. CODE § 35–42–5–1.

4. IND. CODE § 35–43–1–1.

Rothchild went upstairs to bed with his girl-friend, Terri Jorden. The following morning, Wright and Jackson returned to the house where Jackson produced a shotgun and began firing, killing Rothchild. Jackson then turned and shot Daryl Stanton in the back, who had been standing in Rothchild's living room.

Jorden awoke to the sound of gunfire. After Wright entered the bedroom and explained that someone was attempting to break into the house, Jackson, who was carrying a shotgun, entered and demanded Jorden's wallet. Jackson grabbed a handgun from the headboard of the bed, aiming it at Jorden's head. The gun jammed as Jackson tried to fire it. Jackson then took Jorden downstairs, pushed her into the living room and stabbed her. Jackson also beat Jorden with what she believed was the butt of a gun and set fire to her hair and shoulder. Jorden "played dead" and subsequently heard Wright and Jackson leave the house. Record at 386, 389. As Jorden got up, she noticed that a back room in the house was on fire. She then crawled out of the house and walked to a neighbor's residence. Shortly thereafter, Stanton made his way out of the house and to the neighbor's house where he received assistance for his gunshot wounds. When Jorden returned to the house after the incident, she discovered that $300 that she had kept underneath her bed mattress and a handgun that had been stored in the attic were missing.

On October 8, 1995, Wright was arrested at his residence, and Jackson appeared at the police station several hours later and was also arrested. Both were charged with the offenses set forth above, along with one count of Murder in the Perpetration of a Robbery.[5] Shortly after their arrests, Jackson and Wright both gave statements to the police regarding the incidents at Rothchild's residence.[6] In Wright's statement on October 8, he denied any involvement in the crimes and implicated Jackson as the perpetrator of the offenses. Jackson, who gave his statement to the police two days later, indicated that it was Wright who had committed the offenses.

Thereafter, Jackson supplied the police with an additional statement in which he admitted shooting Rothchild and Stanton and stabbing Jorden, but claimed that he committed each of those acts in self-defense.

During a nine-day jury trial which commenced on May 28, 1996, Wright and Jackson were tried jointly and each was represented by a public defender. During Wright's counsel's opening argument, he read to the jury portions of Wright's October 8 statement implicating Jackson and informed them that Wright would testify that Jackson shot Rothchild and Stanton and stabbed Jorden. R. at 325–28. Jackson's counsel objected, arguing that the comments were prejudicial, and moved for a mistrial. The trial court denied the motion.

During trial, Jackson testified that in his first statement, he had supplied false information "out of anger" because the police showed him Wright's statement which did not accurately describe the incident. R. at 1215. During Jackson's testimony, he also admitted shooting Rothchild and Stanton, hitting Stanton with the butt of a shotgun, attacking Jorden and setting fire to the house. Because Jackson had referred to Wright's statement during his testimony, the trial court determined that Jackson had "opened the door" and permitted Wright's counsel to cross-examine Jackson about portions of Wright's statement that the police had shown to him. R. at 1380–91. Despite the representation by Wright's counsel that Wright would testify, he did not.

Thereafter, Jackson was found guilty as charged. During the sentencing hearing conducted on July 16, 1996, the trial sentenced Jackson to an aggregate term of one hundred twenty years as follows: fifty years for the murder of Rothchild under Count I; thirty-five years on Count III for the attempted murder of Jorden which was ordered consecutive to the murder count; thirty-five years for the attempted murder of Stanton on Count IV which was ordered consecutive to the sentences imposed under Counts I and III; thirty years on Count V

---

5. I.C. § 35–42–1–1.

6. These statements were not admitted into evidence.

for the robbery of Jorden, and fifteen years under Count VI for arson, both of which were ordered to run concurrent with the sentences imposed under Counts I, III, IV and V.[7] Jackson now appeals.

## DISCUSSION AND DECISION

### I. Denial Of Mistrial

#### A. Public Defender Representation

Jackson initially argues that the trial court erred in denying his motion for a mistrial following the prosecutor's remarks during closing argument that Jackson was represented by a public defender. Specifically, Jackson contends that such remarks "infringed upon both his Fourth Amendment right to counsel and his financial status." Appellant's Brief at 13.

During closing argument, the prosecutor commented as follows:

> We're not here because the State has so much money it's got nothing better to do. And to go back to that for a second. Counsel says that, you know, all this power that we have, and they're just sitting there, these poor little guys, these poor guys. And we're just beating up on them with all the DNA evidence and everything. Well, they've got the same subpoena powers. Public defenders are paid by the state.

R. at 1717. Following an objection by Jackson's counsel, the trial court determined that the remark was improper and admonished the jury that, "the argument made by the prosecutor as to the representation of the defendants by counsel and their resources is found to be improper and is ordered stricken and the jury is to give it no weight or consideration." R. at 1720. Jackson then moved for a mistrial asserting that the admonishment was insufficient to cure the prejudice that resulted from the prosecutor's remarks. R. at 1720. The trial court then denied Jackson's motion for mistrial.

■ A mistrial is an extreme remedy and should be granted only when no other remedy will cure an alleged harm and causes the defendant to be placed in a position of grave peril. *Schlomer v. State*, 580 N.E.2d 950, 955 (Ind.1991). The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. *Reno v. State*, 514 N.E.2d 614, 617 (Ind.1987). When the trial court adequately admonishes the jury and the prosecutor, the extreme action of a mistrial is not warranted. *Woodrum v. State*, 498 N.E.2d 1318, 1326 (Ind.Ct.App.1986).

■ In the instant case, the trial court promptly and clearly directed the jury to disregard the prosecutor's single reference to the public defender representation. The jury was also instructed that the State bore the burden of proof as to the elements of the offenses charged beyond a reasonable doubt and that Jackson was not required to prove his innocence. R. at 229–30, 233–38, 270. While we agree that the prosecutor's remark was improper, the trial court's admonishment to the jury cured any harm that may have inured to Jackson. As a result, Jackson has not shown that the prosecutor's comment placed him in grave peril and his motion for a mistrial was properly denied. *See Woodrum*, 498 N.E.2d at 1326 (if jury is admonished to disregard prosecutorial misconduct upon which mistrial was predicated, no reversible error will be found).

#### B. Codefendant Wright's Failure to Testify

Jackson next argues that the trial court erred in denying his motion for a mistrial when Wright failed to testify at the trial. Specifically, he contends that he was denied the opportunity to confront and cross-examine Wright regarding a pretrial statement given to the police.

As set forth in the *FACTS*, during opening argument, Wright's counsel read portions of a statement that Wright had previously given to the police. Wright's counsel also indicated that Wright would testify that Jackson committed the offenses. Jackson's counsel objected, claiming that the reference to the

---

7. The trial court merged the conviction for Count II, Murder in the Perpetration of a Robbery, with Count I, and imposed no sentence.

statement was prejudicial, and moved for a mistrial. The trial court denied Jackson's motion and admonished the jury that the portion of Wright's statement that was read during opening argument was not evidence and indicated only what "[counsel] thinks the evidence will show." R. at 327. As Wright elected not to testify, Jackson claims it was error for the trial court to deny his motion for a mistrial because his Sixth Amendment right to confrontation was violated when he was denied the opportunity to cross-examine Wright regarding portions of the statement that were read to the jury.

■ As noted above, a mistrial should only be granted when an admonishment to the jury will not cure an alleged harm and the defendant is left in a position of grave peril. *Schlomer*, 580 N.E.2d at 955. At trial, Wright's counsel only made passing references to the pretrial statement, and only informed the jury of what he thought the evidence at trial would demonstrate. R. at 327. Moreover, Wright's counsel never made it known to the jury that he was reading from his client's statement. Jackson also admitted shooting Rothchild and Stanton and stabbing Jorden. R. at 1371, 1382, 139–95. Stanton and Jorden unequivocally identified Jackson as the principal perpetrator of the offenses. R. at 730–32; 733, 368–86. In light of the overwhelming evidence presented at trial establishing Jackson's guilt, we cannot say that Wright's references to the pretrial statements had an impact upon the jury so as to leave Jackson in a position of grave peril. As a result, the admonishment to the jury was sufficient and the trial court properly denied Jackson's motion for mistrial.

## II. Sentencing

Finally, Jackson argues that the trial court erred in sentencing him to consecutive terms because the offenses arose from a single episode of criminal conduct. Specifically, Jackson claims that the sentencing statute, IND. CODE § 35–50–1–2, prohibited the trial court from sentencing him to more than fifty-five years, the presumptive sentence for murder.

8. IND. CODE § 35–42–2–1.5.

I.C. § 35–50–1–2 provides in relevant part as follows:

(c) [E]xcept for crimes of violence, the total of the consecutive terms of imprisonment ... to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of felonies for which the person has been convicted.

The statute expressly excepts the following crimes of violence from the limitations regarding the imposition of consecutive sentences:

(1) murder;
(2) voluntary manslaughter;
(3) involuntary manslaughter;
(4) reckless homicide;
(5) aggravated battery;
(6) kidnapping;
(7) rape;
(8) criminal deviate conduct;
(9) child molesting;
(10) robbery as a Class A felony or a Class B felony;
(11) burglary as a Class A felony or a Class B felony;
(12) causing death when operating a motor vehicle.

Although the statute does not specifically list attempted murder as a crime of violence, it does list Aggravated Battery[8] which our supreme court has described as a lesser included offense of attempted murder if the charging information contains all the essential elements necessary to convict the defendant of battery. *Johnson v. State*, 464 N.E.2d 1309, 1311 (Ind.1984). The offense of Aggravated Battery occurs when an individual "knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes serious permanent disfigurement or protacted loss or impairment of the function of a bodily member or organ ..."

■ In the instant case, the State charged Jackson with attempted murder, alleging in

the information that Jackson stabbed Jorden with a knife and shot Stanton. In light of these allegations and the evidence presented at trial, Jackson committed the offense of Aggravated Battery as a lesser included offense of his convictions for attempted murder. Therefore, the restrictions of the sentencing statute do not apply, and the trial court was not prohibited from ordering Jackson's sentences to be served consecutively. As a result, Jackson was not improperly sentenced.

Judgment affirmed.

SULLIVAN and KIRSCH, JJ., concur.