**Walter M. LEACH, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 20S00–9606–CR–452.

Supreme Court of Indiana.

Aug. 21, 1998.

Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, for defendant-appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for plaintiff-appellee.

DICKSON, Justice.

In this direct appeal, the defendant, Walter M. Leach, challenges his conviction for the murder[1] of Howard VanZant. VanZant was shot in the head after leaving Duke's Bar in Nappanee, Indiana, in the early morning of July 4, 1995. A jury found the defendant guilty of murder, and the trial court sentenced him to sixty-five years, enhanced by thirty years for his status as a habitual offender based on thirteen prior felony convictions.

[1]. IND CODE § 35–42–1–1 (1993).

On direct appeal, the defendant contends that: (1) he was denied due process of law; (2) the trial court committed reversible error by refusing to grant a mistrial; and (3) the evidence was insufficient to support his conviction for murder.

### 1. Due Process

The defendant contends that, by informing the prospective jurors prior to voir dire that the defendant was also charged with being a habitual offender, the trial court denied the defendant due process of law. It is well established that denial of due process in a state criminal trial "is the failure to observe that fundamental fairness essential to the very concept of justice. [The court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166, 180 (1941) (citation omitted). "Due process means a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78, 86 (1982). "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 755 (1961).

On the first day of trial, the trial court brought in the prospective jurors and stated: "For trial today is a criminal case entitled State of Indiana versus Walter Leach. Mr. Leach is charged with two offenses.... Under Count I, he's charged with the offense of Murder. And under Count II, he's charged with being a Habitual Criminal Offender." Record at 221–22. The State continued with voir dire for approximately eighty minutes and, during the ensuing voir dire, a juror stated that his relationship with his brother, the town sheriff, would not influence his ability to be impartial, but "[t]he only thing that would bother me is ... the second charge that the State has against the gentlemen [sic] being a Habitual Criminal." *Id.* at 393. This juror was ultimately excused.

We addressed the issue of due process violations in the habitual offender context in *Lawrence v. State*, 259 Ind. 306, 286 N.E.2d 830 (1972), wherein the defendant claimed that he was denied due process of law because the State combined the habitual offender and substantive criminal charges in the same proceeding. Thus, the jury was bombarded with the defendant's prior criminal history throughout the entire trial. References to his prior criminal history were in the charging information, voir dire, the preliminary instructions, the State's evidence, and the final instructions. This Court found, "It is difficult to see how the [defendant] could have received a fair trial on the [substantive] charge once the jury became aware of his prior convictions." *Id.* at 312, 286 N.E.2d at 833. Thus, we required a bifurcated approach whereby the habitual offender portion of the trial was to be kept from the jury until a conviction on the substantive charge was returned. This bifurcated approach was thereafter adopted by the General Assembly. *See* IND.CODE § 35–50–2–8(c) (1993).

 We agree with the defendant that his prior habitual criminal history should not have been referenced unless directly relevant to an issue in the guilt phase of the case. *See also Thompson v. State*, 690 N.E.2d 224, 233–34 (Ind.1997). The defendant's criminal history was not directly relevant to an issue in the guilt phase, and, therefore, the trial court's comments were clearly improper. However, not all constitutional errors require reversal. Only those constitutional errors which are "structural defect[s] affecting the framework within which the trial proceeds" are *per se* reversible error.[2] *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302, 331 (1991). All other errors—which the United States Supreme

Court denominates "error[s] in the trial process itself"[3]—subject to a harmless errors analysis, *id.*, whereby if the error was "harmless beyond a reasonable doubt," this Court will affirm the conviction. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967). The error in this case is a trial error rather than a structural error, and thus we will determine whether the error is harmless beyond a reasonable doubt.

At trial, the State produced two eye-witnesses to the murder who had seen the defendant before and during the murder. These witnesses identified the defendant from a photo line-up and made in-court identifications. The witnesses testified that they were at Duke's Bar and noticed the defendant angrily staring at the victim. Around 2:40 a.m., the patrons were asked to move their cars so that the street sweeper could clean the roads. The defendant's group left first, with the victim's group leaving thereafter and walking to a friend's house. As they were passing an alley, one of the victim's friends, Dawn Iamamoto, saw the defendant coming down the alley. While she was trying to warn her friends, a shot rang out, and the victim was killed by a bullet to the head. She testified that she saw the defendant standing at the end of the alley, that it was a "very well lit" area, and that she did not have "any doubt" that the defendant shot the victim. Record at 470, 472. She also testified that she recognized the defendant prior to the shooting, but did not know him.

Another friend of the victim, Rod Fuller, testified that he, too, saw the defendant angrily staring at the victim, threatening "like he wanted to pick a fight." *Id.* at 489. He also clearly saw the defendant in the alley when the shot was fired and testified that the

---

2. Such errors affect the "entire conduct of the trial from beginning to end" and include the total deprivation of the right to counsel at trial, a presiding judge who was biased and not impartial, the unlawful exclusion of members of a defendant's race from the grand jury, the right to self-representation at trial, and the right to a public trial. *Fulminante*, 499 U.S. at 309–10, 111 S.Ct. at 1265, 113 L.Ed.2d at 331 (citations omitted).

3. "Trial errors" subject to harmless error analysis include the introduction of an involuntary statement or confession obtained in violation of the Fifth Amendment, the prosecutor's improper comment on a defendant's silence at trial in violation of the Fifth Amendment, statements obtained in violation of the Sixth Amendment right to counsel, and the admission of an out-of-court statement by a non-testifying codefendant. *Fulminante*, 499 U.S. at 310–11, 111 S.Ct. at 1265, 113 L.Ed.2d at 332 (citations omitted).

defendant was in a "pistol stance. He had both arms extended out, and he was leaning up against the building...." *Id.* at 495. He watched the defendant during all of this, and, while he did not see a gun, he noticed "a spark and then it was a loud bang" from the end of his hands. *Id.* He stated that he got a good look at the defendant and that he will "never forget that face." *Id.*

The defense presented two alibi witnesses, Mr. and Mrs. Cloft, who were with the defendant at Duke's Bar the night of the shooting. Mrs. Cloft testified that she, her husband, the defendant, and his fiancée left Duke's together at 2:43 a.m. in the defendant's car after being asked to move for the sweeper. She testified that they went directly to the defendant's mobile home where they watched a television program, *The Family Feud*. She stated that she and her husband left at approximately 3:15 a.m. and stopped at a gas station because her husband had to have a Pepsi. However, on cross-examination, the State successfully challenged her testimony, producing evidence that *The Family Feud* had gone off the air before the group had ever left Duke's Bar. Mr. Cloft also testified that they did not stop at a gas station on their way home and that he never picked up a Pepsi.

We agree with the defendant's claim that the trial court's comments regarding the habitual offender charge were improper and prejudicial and that, in almost any other instance, such comments would be reversible error. However, in the present case, the evidence of guilt was so overwhelming that such error was harmless beyond a reasonable doubt. *See Woodford v. State,* 544 N.E.2d 1355, 1358 (Ind.1989) (harmless error resulted in no due process or due course of law violation); *LeMaster v. State,* 498 N.E.2d 1185, 1186 (Ind.1986) (harmless error meant defendant not denied a fair trial).

---

4. When the defendant initially moved for a mistrial, he asked that "in the event that the Court determines that a mistrial is not warranted or is [not] improper, we would ask for an instruction, instructing the jury to disregard those statements." *Id.* The next day, the defendant renewed his motion for a mistrial and declined "an admonition to the jury regarding the Judge's comment regarding [the defendant's] alleged sta-

### 2. Mistrial

■ During voir dire, after the juror stated that "[t]he only thing that would bother me is ... the second charge that the State has against the gentlemen [sic] being a Habitual Criminal," Record at 393, the court took a recess, and the defendant objected to the court's comment to the jury pool that the defendant was charged with being a Habitual Criminal Offender. The defendant stated that the comment was "prejudicial and improper" and moved for a mistrial. The judge immediately overruled the objection and denied the motion for mistrial.[4] The defendant contends that the trial court committed reversible error by refusing to grant a mistrial.

■ In determining whether a mistrial is warranted, we consider whether the defendant was placed in a position of grave peril to which he should not have been subjected; the gravity of the peril is determined by the probable persuasive effect on the jury's decision. *Tompkins v. State,* 669 N.E.2d 394, 398 (Ind.1996). "[W]here the jury's verdict is supported by independent evidence of guilt such that we are satisfied that there was no substantial likelihood that the evidence in question played a part in the defendant's conviction, any error in admission of prior criminal history may be harmless," and, therefore, a mistrial is not warranted. *James v. State,* 613 N.E.2d 15, 22 (Ind.1993). *See also Roche v. State,* 596 N.E.2d 896, 901 (Ind.1992).

In *Tompkins,* the defendant contended that the court should have granted a mistrial after a State's witness twice made reference to the possibility that defendant would face habitual offender charges. We found that a mistrial was not required because:

[T]he State's witness ... only mentioned the term "habitual offender" in passing, which the trial court could have determined did not clearly indicate to the jury

---

tus as an alleged Habitual Criminal." *Id.* at 443. He did so because the comments were "fundamental error; and I don't feel an instruction will cure that." *Id.* The State claims the defendant waived this claim because he withdrew his request for an admonition. We disagree with the State and agree with the defendant that, in cases such as this, an instruction will not cure the error.

that defendant had previously been convicted of a crime. The trial court could have reasoned that since no clarifying questions were asked nor other use made of the statement, the jury was not even aware of the implications of [the witness's] statement that defendant faced habitual offender charges.... [T]he remark was not solicited and apparently made without any design to harm defendant. The trial court could have concluded that the State did not intend to elicit the remark or create an evidentiary harpoon.

*Tompkins,* 669 N.E.2d at 399.

In *Roche,* a State's witness referred to an exhibit as a "repeat offender" sheet, and the defendant moved for a mistrial. The defendant argued this placed the jury on notice that he had been convicted of prior crimes and that the jury would therefore be irrevocably prejudiced against him. We held that "[t]he evidence in the present case was not so close that this remark influenced the jury, thereby placing appellant in a position of grave peril." *Roche,* 596 N.E.2d at 902.

Similar to our due process analysis, in light of the limited comments made and the overwhelming nature of evidence against the defendant, we do not believe that he was placed in grave peril, and, therefore, the trial court did not commit reversible error in denying the motion for mistrial.

### 3. Sufficiency of the Evidence

 The defendant contends that the evidence was insufficient to support his conviction for murder. An appellate claim of insufficient evidence will prevail if, considering the probative evidence and reasonable inferences that support the judgment, and without weighing evidence or assessing witness credibility, we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Case v. State,* 458 N.E.2d 223, 226 (Ind.1984); *Loyd v. State,* 272 Ind. 404, 407, 398 N.E.2d 1260, 1264 (1980), *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

As reflected in the facts previously summarized, the evidence was sufficient for a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. The claim of insufficient evidence fails.

### Conclusion

The defendant's conviction for murder is affirmed.

SHEPARD, C.J., and SULLIVAN, SELBY, and BOEHM, JJ., concur.