**Jeramey D. SMITH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A01–0609–CR–385.

Court of Appeals of Indiana.

Aug. 23, 2007.

Matthew Jon McGovern, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

ROBB, Judge.

*Case Summary and Issues*

Following a jury trial, Jeramey Smith appeals his conviction of burglary and his sentence of thirty years. Smith raises two issues, which we restate as whether the trial court abused its discretion in denying Smith's motion for a mistrial and whether the trial court abused its discretion in sentencing Smith.[1] On cross-appeal, the State raises the issue of whether the trial court properly declined, on double jeopardy grounds, to enter a judgment of conviction for robbery. We conclude that the trial court acted within its discretion in denying Smith's motion. We also conclude that the trial court abused its discretion by failing to provide a detailed sentencing statement, and we remand with instructions that the trial court do so. Finally, we conclude that double jeopardy did bar convictions for burglary as a Class A felony and robbery as a Class A felony, but remand with instructions that the trial court enter a conviction for robbery as a Class C felony.

*Facts and Procedural History*

On October 31, 2005, Smith, Steven Cadet, Cornelius Compton, Rex Abel, Terronte Booker, Jonathon Johnson, and a person identified only as "Dee" discussed "hitting a lick," or committing a robbery. The group dressed in black clothes with masks and went to Yvonne Fellows's house, where the group believed Fellows's son would be with a large amount of marijuana and cash. When the group arrived at the house, Fellows answered the door and, assuming that the group was made up of trick-or-treaters, turned to reach for her candy bowl. At this point, someone struck Fellows with a hard object and knocked

1. Smith frames his argument as whether his sentence is inappropriate given the nature of the offense and his character. As explained, *infra,* we need not reach this argument.

her to the floor. Someone then held a gun to Fellows's head and said, "Where's your M.F. son at; where's your M.F. son at? I didn't want no candy, B. Where's your son? . . . I'm going to blow your M.F. head off, where's your son at?" Transcript at 25–26. Fellows repeatedly stated that her son was not at home. Eventually, four members of the group went upstairs, ransacked Fellows's son's room, and took marijuana. Smith remained downstairs with a gun pointed at Fellows, and two others remained with him. Cadet took Fellows's wallet out of her purse while Smith held her at gunpoint. As the group left the house, Fellows was shot in her back. Fellows's daughter, B.H., arrived at roughly the same time Smith and his cohorts were leaving the residence, and threw a lawn chair at them as they ran away. B.H. entered the house and discovered her mother had been shot. She attempted to find a phone to call 911, but discovered that all the phone jacks had been ripped out of the walls. Fellows then told B.H. that a cell phone was in her purse, and B.H. called 911. Fellows was transported to the hospital where she underwent surgery for life-threatening injuries. She sustained fractured ribs, bruised lungs, and broken facial bones.

Smith and Cadet returned to Cadet's house, where several people were, including Virginia Watkins. Smith was concerned about gunpowder residue being on his hands, and Watkins gave him perm solution after someone suggested that it might remove the residue. Watkins heard Cadet ask Smith why he had shot Fellows.

The following day, after receiving information regarding the shooting, police surrounded Cadet's home and arrested Cadet when he left to purchase cigars. Inside the residence, police discovered Fellows's wallet, three bags of marijuana, weighing approximately 245 grams, in the attic,

more marijuana in the living room, and black clothes.

The State charged Smith with burglary, robbery, and attempted murder. At his trial, Fellows, B.H., Cadet, Compton, Watkins, and others testified on behalf of the State. Testimony consistently placed Smith at the scene, but was somewhat conflicting as to whether Smith had been the person who shot Fellows. Fellows testified that several months before trial, Smith called Fellows to apologize for the burglary and shooting. The State asked Fellows about this conversation, and Smith objected based on improper foundation. After preliminary questions outside the presence of the jury, the trial court allowed Fellows to testify regarding this conversation over Smith's objection. During Fellows's testimony, the following exchange took place:

Q: Now, Ms. Fellows, as I asked you before, did you have a phone conversation with Mr. Smith at some point?

A: Yes sir.

Q: And do you recall when this was?

A: About three months ago.

Q: And had you met Mr. Smith before all this happened?

A: Yes.

Q: Had he been in your house?

A: I met him one time and he been in my house one time, yes.

Q: Where'd he go in the house when he was there?

A: Well, he had stand by the door, called my son so he can go upstairs. Jeramey come to get a jacket. My son was in YCC and he was in YCC too and there was . . .

Tr. at 63. At this point, Smith's counsel objected and moved for a mistrial. The trial court overruled Smith's motion and offered to admonish the jury to disregard Fellows's indication that Smith had been in

YCC, the area's juvenile detention facility. Smith's counsel declined the admonishment.

The jury found Smith guilty of burglary and robbery, but not guilty of attempted murder. The trial court then conducted a sentencing hearing. At this hearing, the trial court declined to enter a judgment of conviction for robbery, as it found that it had the same elements as the burglary count. The trial court then made the following statement regarding sentencing:

> The Court notes the defense's argument that there are mitigating circumstances and that would be the defendant's ... they argued that his age and his education are mitigators. The Court does not agree with that. The Court does not find that his age and his education are mitigating circumstances. I have proof of his age. I have no evidence at all in front of me concerning his education other than the pre-sentence investigative report that indicates that he did not graduate or get a GED. The Court finds no mitigating circumstances. I don't think there are any aggravating circumstances other than the offense itself, it's a very aggravating offense what the defendant did in this case whether he was the shooter or not. The Court feels the appropriate sentence is thirty years.

Tr. at 700–01. Smith now appeals his conviction and sentence, and the State appeals the trial court's failure to enter a judgment of conviction for robbery.

### Discussion and Decision

#### I. Mistrial

 Initially, the State argues that Smith has waived this argument by declining to accept the trial court's offer to admonish the jury. When offered an admonishment, Smith's counsel stated:

> Well, Your Honor, I ... it puts me in a box. If we admonish them it brings undue influence to the whole thing. If not, the jurors are left to guess what YCC is and ... have their imagination run amuck as to ... what sort of correctional institution it is.... Without waiving my motion for mistrial I would ask for no admonishment.

Tr. at 65. As Smith's counsel points out, although the reference to YCC was an impermissible reference to Smith's prior bad acts, admonishing the jury to disregard the reference could conceivably have made the situation worse by emphasizing the reference to the jury.

Our supreme court has previously stated that "refusal of an offer to admonish the jury constitutes a waiver of any error in the denial of the motion [for mistrial]." *Randolph v. State*, 755 N.E.2d 572, 575 (Ind.2001); *see also Booher v. State*, 773 N.E.2d 814, 820 (Ind.2002) ("Because of this refusal of the trial court's offer to admonish the jury, the defendant may not assert an appellate claim of error in the denial of his motion for mistrial."). Justice Dickson and Justice Boehm concurred in result in *Randolph*, "believing that refusal to accept an admonition waives the issue only if the admonition would cure the problem." 755 N.E.2d at 576. Regardless of whether or not Smith waived this issue by declining to accept an admonition, we choose to address the issue on its merits. *See Kirby v. State*, 774 N.E.2d 523, 534 n. 5 (Ind.Ct.App.2002), *trans. denied* (reaching merits of defendant's argument, even though she "may have waived this part of her argument on appeal"); *Collins v. State*, 639 N.E.2d 653, 655 n. 3 (Ind.Ct. App.1994), *trans. denied* (noting our "strong preference to decide issues on their merits"). We think it particularly prudent to address the merits of a defendant's claim in cases where trial counsel has rejected an offer to admonish the jury

and specifically commented on the unsavory position of choosing between emphasizing inappropriate testimony to the jury and waiving appellate review of the trial court's denial of a motion for mistrial.

■■■ "A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error." *Warren v. State*, 725 N.E.2d 828, 833 (Ind.2000). A decision regarding a motion for mistrial is within the trial court's discretion, and we will reverse only when the defendant establishes that the trial court abused this discretion. *Randolph*, 755 N.E.2d at 575. "In determining whether a mistrial is warranted, we consider whether the defendant was placed in a position of grave peril to which he should not have been subjected; the gravity of the peril is determined by the probable persuasive effect on the jury's decision." *Leach v. State*, 699 N.E.2d 641, 644 (Ind. 1998). If we conclude that "the jury's verdict is supported by independent evidence of guilt such that we are satisfied that there was no substantial likelihood that the evidence in question played a part in the defendant's conviction, any error in admission of prior criminal history may be harmless." *Id.* (quoting *James v. State*, 613 N.E.2d 15, 22 (Ind.1993)).

Smith initially argues, "the record demonstrates a deliberate attempt by the State to prejudice [Smith]." Appellant's Br. at 13. We disagree. When Fellows testified that her son and Smith had been in YCC together, the State was attempting to establish foundation for Fellows's testimony regarding the telephone call between Smith and Fellows. The prosecutor asked Fellows, "Where'd [Smith] go in the house when he was there?" Tr. at 63. Fellows's response that Smith had been in YCC with her son was not responsive to this question. The prosecutor apologized for Fellows's testimony and stated that he "didn't

intend for that to come out." *Id.* at 64. We decline to conclude that the prosecutor in this case deliberately elicited Fellows's statement that Smith had previously been in YCC. *See Mack v. State*, 736 N.E.2d 801, n. 4 (Ind.Ct.App.2000), *trans. denied* (noting that it is not a case of prosecutorial misconduct where "[t]he prosecutor ... did not intentionally elicit the officer's testimony regarding [the defendant's] prior criminal history").

Whether or not the prosecutor intentionally elicited this testimony, to be entitled to reversal, Smith must demonstrate that the brief reference to Smith's prior placement in YCC put him in grave peril. *See Wells v. State*, 848 N.E.2d 1133, 1144 (Ind. Ct.App.2006), *corrected on reh'g* 853 N.E.2d 143, *trans. denied, cert. denied*, —— U.S. ——, 127 S.Ct. 1913, 167 L.Ed.2d 567 (2007) (when reviewing a claim of misconduct, defendant must show that the misconduct placed the defendant in grave peril). This he cannot do. First, we note that this reference does not unambiguously inform the jury that Smith had a criminal history. *See Tompkins v. State*, 669 N.E.2d 394, 399 (Ind.1996) (where State's witness mentioned the possibility that the defendant might face habitual offender charges, the trial court could have determined that this reference did not clearly inform the jury that the defendant had a criminal history). Smith has failed to demonstrate that the jury knew that "YCC" referred to the area's juvenile detention center. Also, this reference to YCC was made in passing and did not detail the reasons for which Smith was in YCC. Such a brief reference did not place Smith in grave peril so as to necessitate a mistrial. *See Roland v. State*, 501 N.E.2d 1034, 1038 (Ind.1986) (brief statement by police officer that the defendant had "a history of being violent with the police" did not place the defendant in grave peril);

*Jackson v. State,* 698 N.E.2d 809, 813 (Ind. Ct.App.1998), *trans. denied* (defendant was not placed in grave peril where co-defendant's counsel made only passing references to a pre-trial statement made by co-defendant implicating defendant); *Conner v. State,* 613 N.E.2d 484, 493 (Ind.Ct.App. 1993), *aff'd in relevant part,* 626 N.E.2d 803 (Ind.1993) ("The reference to the collateral criminal conduct was vague, made in passing, and could not have left a serious impression upon the jury."). The trial court was in the best position to assess the probable effect of the passing reference to YCC on the jury. *See Tompkins,* 669 N.E.2d at 399. We conclude that the trial court acted within its discretion in determining that a mistrial was not warranted based on Fellows's brief reference to Smith's time spent in YCC, whether or not the prosecutor intentionally elicited this testimony.

## II. Double Jeopardy

In Indiana, multiple convictions are prohibited if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson v. State,* 717 N.E.2d 32, 53 (Ind.1999). "Under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Spivey v. State,* 761 N.E.2d 831, 833 (Ind. 2002). We will analyze both offenses being challenged on double jeopardy grounds in the context of the other offense, and will find "double jeopardy to be violated where the evidentiary fact(s) establishing one or more elements of one challenged offense establish all of the elements of the second challenged offense." *Alexander v. State,*

772 N.E.2d 476, 478 (Ind.Ct.App.2002) (opinion on reh'g), *trans. denied.*

The elements of robbery as a Class A felony are satisfied when a person: (1) knowingly or intentionally; (2) takes property from another person; (3) by using or threatening to use force or putting a person in fear; (4) and it results in serious bodily injury to a person other than the defendant. Ind.Code § 35–42–5–1. The elements of burglary as a Class A felony are satisfied when a person: (1) breaks and enters; (2) the building or structure of another person; (3) with the intent to commit a felony inside; (4) and it results in bodily injury to a person other than the defendant. Ind.Code § 35–43–2–1. Clearly, convictions for robbery and burglary do not violate the *Richardson* actual evidence test as each crime requires proof of a fact that the other does not; robbery requires proof that the defendant took property from another person and burglary requires proof that the defendant broke and entered a structure. *See Pierce v. State,* 761 N.E.2d 826, 830 (Ind.2002) (burglary as a Class A felony and robbery as a Class B felony require proof of different facts); *cf. Jewell v. State,* 672 N.E.2d 417, 427 (Ind. Ct.App.1996), *trans. denied* ("Convictions of both Burglary and Battery do not violate double jeopardy because ... Burglary requires proof of breaking and entering while Battery requires proof of a touching."). Although some of the elements of robbery and burglary may overlap, "nothing prohibits conviction and sentencing for two crimes with a common element." *Carrico v. State,* 775 N.E.2d 312, 315 (Ind. 2002).

However, under Indiana common law, "where a burglary conviction is elevated to a Class A felony based on the same bodily injury that forms the basis of a Class B robbery conviction, the two cannot

stand." *Pierce*, 761 N.E.2d at 830. The proper remedy in this situation is to reduce the robbery conviction to robbery as a Class C felony, which does not require proof of bodily injury. *Id.* Similarly, we conclude that if the same bodily injury was used to enhance Smith's conviction of burglary to a Class A felony as was used to enhance his conviction of robbery to a Class A felony, entering a judgment of conviction for both counts would be improper.

■ The State argues that the bodily injury used to support the burglary conviction stems from Smith hitting Fellows in the head upon entering the house, and that the bodily injury used to support the robbery conviction stems from Smith shooting Fellows just prior to leaving the residence. When determining what facts a jury used to establish each element of an offense, "we consider the evidence, charging information, final jury instructions ... and arguments of counsel." *Rutherford v. State*, 866 N.E.2d 867, 871 (Ind.Ct.App.2007). At trial, conflicting evidence was introduced as to whether Smith was the person who struck Fellows and as to whether Smith was the person who shot Fellows. The trial court's instructions to the jury did not specify which bodily injury was being used to charge Smith with robbery or burglary, but the attempted murder instruction indicates that the State alleged that Smith

"did attempt to commit the crime of murder by intentionally shooting Yvonne Fellows in the back; which conduct constituted a substantial step toward the commission of said crime of murder." Tr. at 571. Significantly, the jury found Smith not guilty of attempted murder, raising the possibility that the jury determined that Smith had struck Fellows upon entering the residence, but was not the person who shot Fellows as the group left the house. Although we recognize that sufficient evidence might exist to support a finding that Smith caused two separate bodily injuries, we conclude that Smith has demonstrated a reasonable possibility that the same bodily injury was used to enhance both his burglary and robbery convictions. *See Hampton v. State*, 719 N.E.2d 803, 809 (Ind.1999) (reducing robbery conviction to a Class C felony where victim had sustained numerous blunt force blows and had been stabbed roughly twenty times, because "[t]he same evidence that supported the murder conviction, the act of stabbing, *may* have also been used to convict Defendant of robbery" (emphasis added)). Therefore, we remand with instructions that the trial court enter a judgment of conviction for robbery as a Class C felony.[2]

### III. Sentencing

■ Smith committed his crimes after April 25, 2005, putting this case under

**2.** We recognize that "an erroneous entry of acquittal by the trial court acts as an acquittal for double jeopardy purposes." *State v. Casada*, 825 N.E.2d 936, 940 (Ind.Ct.App.2005). However, in this case, the trial court did not enter a judgment of acquittal on the robbery charge, and merely declined to enter a judgment of conviction. The trial court declined to do so not on any basis related to the resolution of a factual element of the robbery offense, *see Elkins v. State*, 754 N.E.2d 643, 644 (Ind.Ct.App.2001), *trans. denied* ("Whether the trial court's action constitutes acquittal for the purposes of double jeopardy is ... ascertained ... by determining whether the

substance of the ruling, whatever its label, actually represents resolution, correct or not, of some or all of the factual elements of the offense charged."), but on the ground that the elements of the burglary and robbery counts were the same. Therefore, it does not violate double jeopardy for us to remand with instructions that the trial court enter a judgment of conviction. *See State v. Haines*, 545 N.E.2d 834, 836 n. 5 (Ind.Ct.App.1989), *trans. denied* ("[R]einstatement of the jury's verdict is not barred by double jeopardy principles. It is only when a defendant is *acquitted* that double jeopardy will preclude retrial." (emphasis in original)).

the advisory sentencing scheme. *See Gibson v. State,* 856 N.E.2d 142, 146 (Ind.Ct. App.2006). Under this sentencing scheme, a trial court may impose any legal sentence "regardless of the presence or absence of aggravating circumstances or mitigating circumstances." Ind.Code § 35–38–1–7.1(d). In *Anglemyer v. State,* 868 N.E.2d 482 (Ind.2007), our supreme court held that under this sentencing scheme Indiana trial courts are required to issue a sentencing statement whenever sentencing a defendant for a felony. *Id.* at 490. "If the recitation includes a finding of aggravating or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating." *Id.* We continue to review a trial court's sentencing decisions for an abuse of discretion. *Id.* The trial court can abuse its discretion be either failing to issue a sentencing statement or by issuing a statement that indicates the reasons for a sentence "but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law." *Id.* at 490–91.

■■■■ Smith argues that the trial court should have found his age to be a mitigating factor. "[A] defendant's youth, although not identified as a statutory mitigating circumstance, is a significant mitigating circumstance in some circumstances." *Brown v. State,* 720 N.E.2d 1157, 1159 (Ind.1999). However, youth is not automatically a significant mitigating circumstance. *Gross v. State,* 769 N.E.2d 1136, 1141 n. 4 (Ind.2002). As our supreme court has observed, "There are both relatively old offenders who seem clueless and relatively young ones who appear hardened and purposeful." *Ellis v. State,* 736 N.E.2d 731, 736 (Ind.2000). Whether a defendant's age constitutes a significant mitigating circumstance is a decision that lies within the discretion of the trial court. *Id.* Here, the trial court did not overlook Smith's age when making its sentencing decision, but recognized that Smith was young when he committed the crime and specifically declined to find his age to be a significant mitigating circumstance. As our supreme court has explained: "This was the trial court's call." *Anglemyer,* 868 N.E.2d at 493; *see id.* ("If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist." (quoting *Fugate v. State,* 608 N.E.2d 1370, 1374 (Ind.1993))).[3] The trial court did not abuse its discretion in declining to find Smith's age to be a mitigating factor.

■■■■ As an aggravating factor, the trial court found, "the offense itself, it's a very aggravating offense what the defendant did in this case whether he was the shooter or not." Tr. at 700–01. The trial court may consider the nature and circumstances of the crime as an aggravating circumstance. *See Ousley v. State,* 807 N.E.2d 758, 760, 765 (Ind.Ct.App.2004); *cf.* Ind.Code § 35–38–1–7.1(a)(1) (indicating that the trial court may consider as an aggravating circumstance the extent to which the harm caused by the defendant exceeded that necessary to meet the elements of the offense). However, the trial court here did not explain what about the crime was aggravating; that is, what about

---

**3.** We note that the trial court is not prohibited from explaining why it declines to find a mitigating circumstance, and in many cases it may aid appellate review and promote the interests of justice for a trial court to do so.

this crime was worse than a typical burglary as a Class A felony. A trial court's sentencing statement must "explain why each circumstance has been determined to be mitigating or aggravating." *Anglemyer*, 868 N.E.2d at 490. By failing to issue "a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence," *id.*, we conclude that the trial court abused its discretion.[4] When a trial court fails to issue an adequate sentencing statement, we may remand to the trial court for clarification. *Windhorst*, 868 N.E.2d at 507. We conclude that remand is the proper result in this case, and do so with instructions that the trial court enter a sufficiently detailed sentencing statement.[5]

## Conclusion

We conclude that the trial court acted within its discretion in denying Smith's motion for a mistrial. We also conclude that double jeopardy bars Smith's convictions of burglary as a Class A felony and robbery as a Class A felony, but that Smith can properly be convicted of burglary as a Class A felony and robbery as a Class C felony. Therefore, we remand with instructions that the trial court enter judgment of conviction and sentence Smith for robbery as a Class C felony. Finally, we conclude that the trial court abused its discretion in failing to issue an adequately

detailed sentencing statement, and remand with instructions that it do so.

Affirmed in part, reversed in part, and remanded with instructions.

VAIDIK, J., concurs.

SULLIVAN, SR., J., concurs as to Parts I and III, concurs in result as to Part II with opinion.

SULLIVAN, SR., Judge, concurring in part and concurring in result in part.

I respectfully concur as to Parts I and III. I concur in result as to Part II.

With respect to the latter, I am unable to agree that the quotation from *Spivey v. State*, 761 N.E.2d 831 (Ind.2002) set forth in the majority opinion on page 176, accurately reflects the law in its current state. The *Spivey* quotation states that "the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing *the essential elements* of one offense also establish *only one or even several, but not all, of the essential elements of a second offense.*" (Emphasis supplied). This sentence read in isolation can only be read to hold that there is a double jeopardy violation *only* when *all* of the elements of one crime are established by evidence proving *all* of the elements of the second crime.

---

4. We recognize that the trial court did not have the benefit of *Anglemyer* at the time it sentenced Smith. In some circumstances where the trial court fails to enter a sentencing statement, we will be able to avoid remanding. *See Windhorst v. State*, 868 N.E.2d 504, 507 (Ind.2007) (where court of appeals had analyzed defendant's sentence under Appellate Rule 7(B), supreme court found in unnecessary to remand for trial court to issue sentencing statement). However, in this case, we conclude that the appropriate measure is to remand and allow the trial court to explain how it reached its sentence. We note that as we are already remanding with instructions

that the trial court enter an additional judgment of conviction and sentence.

5. Because we remand for a sentencing statement, we do not reach Smith's argument regarding whether his sentence is inappropriate based upon his character and the nature of the offense. It would not be particularly useful for us to address this argument, as we are also remanding with instructions that the trial court enter an additional judgment and sentence, and therefore, Smith's aggregate sentence has not yet been determined.

I submit that the law is otherwise. As stated in our opinion upon rehearing in *Alexander v. State*, 772 N.E.2d 476 at 478 (Ind.Ct.App.2002), *trans. denied*:

"... the *Richardson* actual evidence test, as applied by our Supreme Court, has found double jeopardy to be violated where the evidentiary fact(s) establishing one or more elements of one challenged offense establish all the elements of the second challenged offense. For there to be a double jeopardy violation it is not required that the evidentiary facts establishing *all* of the elements of one challenged offense also establish *all* of the essential elements of a second challenged offense (Original emphasis). To be sure, if such is the case, double jeopardy has been violated, but that scenario is not the only situation in which double jeopardy prohibitions exist. Both of the offenses being analyzed for double jeopardy purposes must be viewed in the context of the other offense. If the evidentiary facts establishing any one or more elements of one of the challenged offenses establishes the essential elements of the second challenged offense, double jeopardy considerations prohibit multiple convictions."

In Justice Sullivan's separate concurrence in *Richardson* he noted that the prohibition against multiple convictions is implicated in five different categories. One such category was defined as follows:

"3. Conviction and punishment for a crime which consists of the very same act as *an* element of another crime for which the defendant has been convicted and punished" (Emphasis supplied).

Justice Sullivan's analysis and approach to such situations prohibiting multiple punishments has been acknowledged and accepted by our Supreme Court. See *Guyton v. State*, 771 N.E.2d 1141 (Ind.2002).

Subject to the above commentary, I concur.