Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2012, 10:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**THOMAS W. VANES**
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL R. KROHN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1203-CR-131 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-1108-FD-166

**December 7, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Michael R. Krohn (Krohn), appeals his sentence for operating a motor vehicle while intoxicated causing serious bodily injury, a Class D felony, Ind. Code § 9-30-5-4.

We affirm.

## ISSUES

Krohn raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion in identifying aggravating and mitigating factors; and

(2) Whether the trial court's sentence was improper in light of the nature of Krohn's offense and his character.

## FACTS AND PROCEDURAL HISTORY

On the afternoon of April 23, 2011, William Goodwin (Goodwin) was riding on his motorcycle southbound on Cline Avenue in Schererville, Indiana. As he approached the parking lot of a restaurant, Krohn pulled out directly in front of him driving a Chevrolet truck. Krohn saw Goodwin approaching and stopped in the middle of the roadway, unsure what to do. Goodwin applied his brakes, but was unable to stop his motorcycle and ran into the truck's driver's side door.

A witness saw the accident and ran inside the restaurant to prompt someone to call 911. She then rushed back out to attend to Goodwin at the scene of the crash. She talked to Goodwin and did not smell any alcohol on his breath. She also spoke to Krohn, who

had gotten out of his truck and lit a cigarette. She noticed that Krohn "definitely seemed like he was on something because he was out of it." (Appellant's App. p. 26).

Police officers reported to the scene and questioned Krohn. He admitted that he had been drinking the previous night and that prior to the accident he had been drinking an energy drink, which was in his truck. The energy drink was a Sparks energy drink and contained six percent alcohol. The officers found one full can of Sparks energy drink and one completely empty can in the truck's passenger compartment. They also observed that there was a 1.75 liter bottle of Bacardi and a 1.75 liter bottle of Southern Comfort in the passenger compartment, both of which were open and had contents missing.

While talking to Krohn, the police officers noticed that he had a yellow stain on his teeth, lips, tongue, and mouth and also had an odor of an "alcoholic type beverage" on his breath. (Appellant's App. p. 25). Additionally, he had watery and bloodshot eyes, a flushed red face, slurred and mumbled speech, and poor hand coordination. The officers conducted multiple field sobriety tests, and Krohn failed each test. They also administered a portable breath test, which registered that Krohn had a blood alcohol content of 0.21. Krohn thereafter refused to take further chemical tests.

Goodwin was taken by ambulance to the local hospital, where he was treated for multiple blunt force trauma and intra-abdominal bleeding. Subsequently, he was transferred to a hospital in Illinois, where he received additional treatment for two months. During that time, he spent three weeks in a medically induced coma, had to undergo thirteen different surgeries, and suffered from septic shock and pneumonia. His

3

injuries required that he undergo an ileostomy procedure. Seven months later, he still had and maintained an ileostomy bag, and it is uncertain whether he will ever be able to have the bag removed.

On August 3, 2011, the State filed an Information charging Krohn with Count I, operating a vehicle while intoxicated causing serious bodily injury, a Class D felony, I.C. § 9-30-5-4; Count II, operating a vehicle while intoxicated, a Class A misdemeanor, I.C. § 9-30-5-2; and Count III, operating a vehicle while intoxicated, a Class C misdemeanor, I.C. § 9-30-5-2. On January 18, 2012, Krohn pled guilty to all three Counts.

On February 16, 2012, the trial court accepted Krohn's plea and held a sentencing hearing, at which both Goodwin and his wife testified to the impact Krohn's actions had made on their lives. Goodwin's wife told the trial court that Goodwin and her family have suffered "[i]ndescribable" mental anguish. (Transcript p. 24). Goodwin has trouble sleeping because he has to sleep in a recliner rather than his bed, due to the ileostomy bag, and has to get up three or four times a night to drain the bag. During the day, he has to deal with leaks from the bag, which are embarrassing and which he can never predict. In addition, Goodwin's wife testified that he suffers from night terrors concerning the accident, as well as problems with his back and stomach. Goodwin no longer has stomach muscles and requires help to get in and out of his recliner. At the time of the sentencing hearing, Goodwin still required an additional surgery. His wife testified that even if doctors are able to remove his ileostomy bag during this surgery, he will still have to live with significant scarring on his chest, neck, and abdomen for the rest of his life.

At the conclusion of the evidence, the trial court sentenced Krohn to thirty months on Count I, with six of those months to be served in a community transition program. It found that the seriousness of Krohn's offense was an aggravating factor, while his lack of a criminal history was a mitigating factor. The trial court did not enter a judgment of conviction on Counts II and III as they were lesser-included offenses.

Krohn now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Aggravating and Mitigating Factors*

Krohn argues on appeal that the trial court abused its discretion in identifying aggravating and mitigating factors. Under our advisory sentencing scheme, a trial court may impose any legal sentence "regardless of the presence or absence of aggravating circumstances." *Smith v. State,* 872 N.E.2d 169, 178 (Ind. Ct. App. 2007), *trans. denied.* However, trial courts are required to issue a sentencing statement whenever sentencing a defendant for a felony. *Id.* If the sentencing statement includes a finding of aggravating or mitigating circumstances, then it must identify all significant aggravating and mitigating circumstances and explain why each circumstance has been determined to be either aggravating or mitigating. *Id.* We review a trial court's sentencing decisions for an abuse of discretion. *Id.* A trial court can abuse its discretion by either failing to issue a sentencing statement, by issuing a statement that indicates the reasons for a sentence "but the record does not support the reasons, or the sentencing statement omits reasons

5

that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law." *Id.*

## A. *Aggravating Factors*

With respect to aggravating factors, Krohn argues that the trial court abused its discretion because it did not explain why the seriousness of his offense was an aggravating factor. He asserts that, instead, the damages that resulted from his offense were typical of operating a vehicle while intoxicated causing bodily injury. In addition, he argues that the trial court abused its discretion in finding the seriousness of his offense as an aggravating factor because "serious bodily injury" is also an element of the offense.

In its sentencing statement, the trial court stated that "the seriousness of this crime does require an aggravated sentence" without explaining the evidence supporting that finding. (Tr. p. 41). Krohn notes that the trial court did not identify whether the surgeries Goodwin underwent were serious or why he was medically induced into a coma. We cannot agree that the trial court needed to go so far as to rate the seriousness of each individual surgery in determining the severity of Goodwin's injuries. Instead, we conclude that while the trial court's sentencing statement was brief, the evidence supported its determination that the seriousness of Krohn's offense was an aggravating factor. Goodwin and his wife testified to the pain and mental anguish Goodwin has suffered as a result of Krohn's actions, including undergoing several surgeries, being medically induced into a coma, having to use an ileostomy bag, and having to live with significant scarring for the rest of his life. In light of this evidence, we cannot agree that

6

the trial court abused its discretion in finding that the seriousness of Krohn's offense was an aggravating factor.

In addition, we do not agree with Krohn that this aggravating factor was improper because "serious bodily injury" was also an element of the offense. It is well-established in Indiana that "a trial court may not use a material element of the offense as an aggravating circumstance." *Caraway v. State,* 959 N.E.2d 847, 850 (Ind. Ct. App. 2011), *trans. denied.* However, the nature and circumstances of a crime may be a valid aggravator. *Sharkey v. State,* 967 N.E.2d 1074, 1078 (Ind. Ct. App. 2012). For instance, the harm or injury suffered by a victim may be aggravating "if such harm was significant and greater than the elements necessary to prove the commission of the offense." *Id.*

Under the Indiana Code, an injury can rise to the level of serious bodily injury merely if there is "extreme pain" or "unconsciousness." *See* I.C. § 35-31.5-2-292. As listed above, Goodwin's injuries were far more serious than "extreme pain" or "unconsciousness." *See* I.C. § 35-31.5-2-292. Accordingly, we conclude that the trial court did not abuse its discretion in determining that the harm Goodwin suffered was greater than necessary to prove the commission of the offense; thus, the trial court did not abuse its discretion in finding that the seriousness of the crime was an aggravating factor.

### B. *Mitigating Factors*

With regards to mitigating circumstances, Krohn argues that the trial court abused its discretion in failing to consider his guilty plea as a mitigating factor. He asserts that

the trial court should have given the plea mitigating weight as he did not receive anything from the State in exchange for the plea, and he did not wait until the eve of trial to plead.

In order to show that a trial court failed to identify or find a mitigating factor, the defendant must establish that the mitigating evidence is both significant and clearly supported by the record. *Rogers v. State,* 958 N.E.2d 4, 9 (Ind. Ct. App. 2011). Although a failure to find mitigating circumstances clearly supported by the record may imply that the trial court improperly overlooked them, the trial court is not obligated to explain why it has chosen not to find mitigating circumstances. *Id.* Likewise, the trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor. *Id.* Our supreme court has held that a guilty plea does not automatically amount to a significant mitigating factor. *Wells v. State,* 836 N.E.2d 475, 479 (Ind. Ct. App. 2005), *trans. denied.* For instance, a guilty plea does not rise to the level of significant mitigation where the defendant has received a substantial benefit from the plea or where the evidence against the defendant was such that the decision to plead guilty was merely a pragmatic one. *Id.*

We conclude that Krohn's decision to plead guilty was merely pragmatic in light of the overwhelming evidence against him. In order to convict Krohn of operating a vehicle while intoxicated causing serious bodily injury, the State was required to prove that he "cause[d] serious bodily injury to another person when operating a vehicle: [] with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per: [] two hundred ten [] liters of [his] breath; [or] while intoxicated." I.C. § 9-

8

30-5-4. Krohn admitted that he had been drinking the previous night and had been drinking an energy drink containing alcohol prior to the accident. Police officers found two 1.75 liter bottles of alcohol in Krohn's passenger compartment, and each was partially empty. Further, Krohn failed multiple field sobriety tests; registered as having a blood alcohol content of 0.21 on a portable breath test; and had an odor of an "alcoholic type beverage" on his breath, watery and bloodshot eyes, a flushed face, slurred and mumbled speech, and poor hand coordination. Given this ample evidence of Krohn's intoxication and the undisputed facts that Krohn was operating a motor vehicle and caused serious bodily injury, we conclude that the trial court did not abuse its discretion in declining to find that Krohn's plea was a mitigating factor.

## II. *Nature of Offense and Character of Offender*

Next, Krohn argues that his sentence was inappropriate in light of the nature of his offense and his character. Under Indiana Appellate Rule 7(B), this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Childress v. State,* 848 N.E.2d 1073, 1079-80 (Ind. 2006). Although this court is not required to use "great restraint," we nevertheless exercise deference to a trial court's sentencing decision, both because Appellate Rule 7(B) requires that we give "due consideration" to that decision and because we recognize the unique perspective a trial court has when making decisions. *Stewart v. State,* 866 N.E.2d 858, 865-66 (Ind. Ct. App. 2007). The "principal role of appellate review should be to

9

attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

A Class D felony carries a sentence ranging of six months to three years, with an advisory sentence of one and one-half years. Because the trial court sentenced Krohn to three years, he received the maximum sentence possible for a Class D felony.

In regards to the nature of Krohn's offense, he again argues that the trial court did not identify any particular circumstances of his offense that made it more egregious than other cases of operating a vehicle while intoxicated causing bodily injury. He claims that his offense was "standard" and did not justify the maximum sentence for a Class D felony. (Appellant's Br. p. 7). We disagree. Pursuant to I.C. § 9-30-5-4, a person may be convicted for causing serious bodily injury while operating a vehicle if that person has an alcohol concentration of 0.08 grams of alcohol per 210 liters of the person's breath. When the police officers administered a portable breath test to Krohn, they found that he had a blood alcohol content of 0.21, over two times the legal limit.

Further, Krohn's offense had broad repercussions. As a result of Krohn's actions, Goodwin and his family have suffered "[i]ndescribable" mental anguish. (Tr. p. 24). Goodwin has trouble sleeping because he has to sleep in a recliner rather than his bed, due to the ileostomy bag, and has to get up three or four times a night to drain the bag. During the day, he has to deal with leaks from the bag, which are embarrassing and which he can never predict. In addition, Goodwin's wife testified that he suffers from

10

night terrors concerning the accident, as well as problems with his back and stomach. Goodwin no longer has stomach muscles and requires help to get in and out of his recliner. At the time of the sentencing hearing, Goodwin still required an additional surgery. His wife testified that, even if doctors are able to remove his ileostomy bag during this surgery, he will still have to live with significant scarring on his chest, neck, and abdomen for the rest of his life. Accordingly, we cannot conclude that the nature of Krohn's offense was "standard" and justifies a lower sentence.

Finally, Krohn argues that his guilty plea and lack of criminal history illustrate his good character. We find little merit in this argument because, as we stated above, Krohn's decision to plead guilty was merely pragmatic in light of the overwhelming evidence against him. In addition, Krohn was previously convicted of one misdemeanor offense, also related to alcohol. We do agree with Krohn that, other than his previous misdemeanor offense, his lack of a criminal history supports his character. However, any merit we find in his character is overshadowed by the nature of his offense. Accordingly, we decline to find that his sentence was inappropriate in light of the nature of his offense and his character.

## CONCLUSION

Based on the foregoing, we conclude that (1) the trial court did not abuse its discretion in identifying aggravating and mitigating factors; and (2) the trial court's sentence was proper in light of the nature of Krohn's offense and his character.

Affirmed.

11

BAILEY, J. and CRONE, J. concur