Garganus T. MOORE, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 89A05–0701–CR–12.

Court of Appeals of Indiana.

March 20, 2008.

E. Thomas Kemp, Richmond, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilander, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Garganus T. Moore appeals from his convictions and sentence for rape[1] as a Class B felony, criminal deviate conduct[2] as a Class B felony, criminal confinement[3] as a Class D felony, and battery[4] as a Class C felony. He raises the following three restated issues:

**1.** *See* IC 35–42–4–1.

**2.** *See* IC 35–42–4–2.

**3.** *See* IC 35–42–3–3.

**4.** *See* IC 35–42–2–1.

I. Whether Moore's convictions for rape and criminal deviate conduct were precluded by double jeopardy because of a previous guilty plea to battery;

II. Whether the trial court provided a sufficient sentencing statement; and

III. Whether Moore's aggregate sentence of thirty-six years was inappropriate in light of the nature of the offense and the character of the offender.

The State raises the following issue on cross-appeal:

IV. Whether the trial court erred when it refused, on double jeopardy grounds, to submit the rape and criminal deviate conduct charges to the jury as Class A felonies and the criminal confinement charge as a Class C felony.

We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

On March 22, 2006, at approximately 1:30 a.m., Moore arrived at the apartment of his then-girlfriend, C.S. The two had been dating since December 2005, and C.S. was about four months pregnant with Moore's child. Moore knew that C.S. was pregnant and that the baby was his child. C.S. had two other children who were two years old and thirteen months old and were sleeping when Moore arrived at the apartment.

When Moore came inside, he began arguing with C.S. and accused her of hugging his friend. He ordered C.S. to go into her bedroom and to lie on the bed, and she complied. Moore began hitting C.S. on the head and legs. He kicked, head-butted, and bit her legs and choked her with his hands, warning her not to scream. Moore continued to beat C.S. for several hours, striking her over one hundred times in total. He told C.S. that she could not leave and that he would kill her if she tried to leave. During this time, Moore attempted to take off her pants and C.S. resisted, but Moore was able to pull off her pants and have sexual intercourse with C.S. against her will.

At approximately 7:00 a.m., C.S.'s two-year-old child woke up and wanted juice. Moore allowed C.S. to leave the bedroom to get the child some juice. C.S. was scared, in a lot of pain, and could hardly walk. Moore left the apartment for a few hours, but before he left, he threatened to beat C.S. even worse if she tried to leave or if she called the police. When Moore returned, he was still angry with C.S. and continued to degrade her. At some point, Moore altered the doorknob and lock on the door of C.S.'s bedroom so that it could not be opened from the inside when it was closed. C.S. realized this when she could not open the door. She also noticed that Moore had removed the telephone from her bedroom. She wrote "Help call 911 Emergency" on an envelope containing a utility bill that listed her name and address and dropped it out of her apartment window, which was ten feet above the ground. A maintenance worker at the apartment complex found the envelope on March 23 or 24, and he gave it to the management but did not otherwise summon help.

Moore forced C.S. to stay in the apartment through March 24. During this time, some of Moore's friends came over, and he made C.S. pull down her pants and show the friends her bruises, which was humiliating to C.S. On March 23, Moore forced C.S. to perform oral sex on him and threatened to beat her if she did not comply. Also, on that date, Moore had several knives in view of C.S. and talked about

killing her and her children. He held the knife to C.S.'s neck and said that he would kill her and her older child and let the younger child play in their blood. *Tr.* at 247.

On March 24, 2006, Moore forced C.S. and the children to go to a neighbor's apartment to avoid C.S.'s family as they had been calling to inquire about her well-being. C.S. had a visible black eye, and Moore told the neighbor, that he had hit C.S. because she was with another guy. *Id.* at 427–28. After the neighbor's boyfriend was able to get Moore to leave the apartment, C.S. showed the neighbor the other bruises on her body and told her about the beating.

Eventually the police were called, and an officer came to speak to C.S. C.S. had a large bruise on her right eye, bruises on her neck and right upper arm, and large bruises covering almost her entire right and left legs. C.S. was limping and in a lot of pain when she spoke to the officer. She told the officer about being beaten and confined in her apartment by Moore and that he had threatened to kill her and the children. When she was alone with her mother, C.S. broke down and told her mother that Moore had raped her and forced her to perform oral sex. On March 28, C.S. spoke with a detective and told him what she had confided to her mother.

The State charged Moore with rape as a Class A felony, criminal deviate conduct as a Class A felony, criminal confinement as a Class B felony, and battery as a Class C felony. All four charges were enhanced because they resulted in serious bodily injury, specifically "extreme pain and bruising." *Appellant's App.* at 12. A jury trial was held on these charges, which began on November 14, 2006. After a jury had been selected, but before opening statements, Moore pled guilty to Class C felony battery and admitted that he had punched C.S. resulting in extreme pain and bruising to her. *Tr.* at 145–46. The trial then proceeded on the remaining three counts. At the conclusion of the trial, the State objected to the trial court's decision to only submit the rape and criminal deviate conduct charges to the jury as Class B felonies and the criminal confinement charge as a Class D felony because Moore had already been convicted of the Class C felony battery charge, which was enhanced because it resulted in serious bodily injury, the same injury used to enhance those offenses. The trial court denied this objection and only submitted the lesser offenses to the jury. The jury found Moore guilty of Class B felony rape, Class B felony criminal deviate conduct, and Class D felony criminal confinement.

At the sentencing hearing, the trial court gave an oral sentencing statement, explaining its reasons for rejecting Moore's proposed mitigating circumstances. It also explained the aggravating circumstances it found and what weight it assigned to these factors. After finding that the aggravating circumstances far outweighed the mitigating circumstances, the trial court sentenced Moore to fifteen years for Class B felony rape, fifteen years for Class B felony criminal deviate conduct, two years for Class D felony criminal confinement, and six years for Class C felony battery. The two fifteen-year sentences and the six-year sentence were ordered to be served consecutively to each other, with the two-year sentence to be served concurrently for an aggregate sentence of thirty-six years. Moore now appeals.

## DISCUSSION AND DECISION

### I. Double Jeopardy

■ Moore argues that his prosecution and convictions for rape and criminal devi-

ate conduct violated Indiana's prohibition against double jeopardy because of his previous guilty plea to battery. Specifically, he contends that battery is a lesser-included offense of rape and criminal deviate conduct, and he could not be prosecuted and convicted for these greater offenses after he pled guilty to the lesser-included offense of battery. Because he pled guilty to battery before he was tried for the offenses of rape and criminal deviate conduct, he believes that his subsequent prosecution for these offenses was barred, and his convictions should therefore be vacated.

■■■ If a defendant wishes to dispose of one of the charges pending against him by pleading guilty, he may do so, but he cannot use his guilty plea to deprive the State of the opportunity to fully prosecute, or to determine which charges will, or will not, be pursued against him. *State v. Boze*, 482 N.E.2d 276, 279 (Ind.Ct.App. 1985), *trans. denied* (1986). "Where the defendant has an active hand in arranging the disposition of the causes so he might benefit from the results, he waives any double jeopardy claims." *Boze v. State*, 514 N.E.2d 275, 277 (Ind.1987).

The United States Supreme Court has held that the Double Jeopardy Clause does not prohibit the State from continuing its prosecution of a defendant on greater charges when he had previously pled guilty to lesser-included charges. *Ohio v. Johnson*, 467 U.S. 493, 502, 104 S.Ct. 2536, 2542, 81 L.Ed.2d 425 (1984). In that case, the defendant was charged with four charges as a result of a killing and theft of property, pled guilty to the two lesser charges, and successfully moved to have the two greater offenses dismissed on double jeopardy grounds. *Id.* at 495–96, 104 S.Ct. 2536. The Supreme Court reasoned that the continued prosecution of the defendant did not amount to the imposition of cumulative punishments that is the concern of the Double Jeopardy Clause because, before the defendant could ever be punished for the greater offenses, he would first have to be found guilty. *Id.* at 499, 104 S.Ct. 2536. The trial court's dismissal of the more serious charges did more than prevent the imposition of cumulative punishments; it ended the proceedings that would have led to a verdict of guilt or innocence on the charges. *Id.* at 499–500, 104 S.Ct. 2536. This action by the trial court denied the State "its right to one full and fair opportunity to convict those who have violated its laws." *Id.* at 502, 104 S.Ct. 2536 (citing *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978)). "[Defendant] should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges." *Id.*

Indiana courts have also held that double jeopardy is not implicated when the State continues to prosecute a defendant on greater charges after he has pled guilty to a lesser offense. In *State v. Boze*, the defendant was charged with attempted murder and battery arising out of an attack on a police officer, and the defendant pled guilty to battery just before the trial was to commence. 482 N.E.2d at 277. After this plea was accepted, the defendant successfully moved to have the attempted murder charge dismissed on double jeopardy grounds. *Id.* On appeal, a panel of this court adopted the reasoning of *Ohio v. Johnson* and concluded that a defendant may not use his guilty plea to a lesser offense to deprive the State of the opportunity to fully prosecute him or to determine which charges to pursue. *Id.* at

278.[5] In a related appeal, the Indiana Supreme Court agreed with this holding and stated that the defendant could be prosecuted on the attempted murder charge because he had waived any double jeopardy claims. *Boze*, 514 N.E.2d at 277.

In the present case, without the offer of a plea agreement, Moore pled guilty to battery as a Class C felony after the jury had been selected and before opening statements were made. He then proceeded to trial on the remaining counts, and was found guilty of Class B felony rape, Class B felony criminal deviate conduct, and Class D felony criminal confinement. We conclude that Moore could be prosecuted for rape and criminal deviate conduct after his guilty plea to battery because his guilty plea could not be used to deprive the State of the opportunity to prosecute him on all of the charged offenses.

■■■■ Moore also asserts that his convictions and sentences for rape and criminal deviate conduct violated double jeopardy because the same evidence of force was used to prove those offenses and to prove battery. Article 1, section 14 of the Indiana Constitution states that "[n]o person shall be put in jeopardy twice for the same offense." "Two or more offenses are the 'same offense,' if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one charged offense also establish the essential ele-

ments of another charged offense." *Moore v. State*, 869 N.E.2d 489, 493 (Ind. Ct.App.2007). Under the actual evidence test, we examine the actual evidence presented at trial to determine whether each challenged offense was established by separate and distinct facts. *Curry v. State*, 740 N.E.2d 162, 166 (Ind.Ct.App.2000), *trans. denied* (2001). To prove a violation, a defendant must show "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Smith v. State*, 872 N.E.2d 169, 176 (Ind. Ct.App.2007), *trans. denied* (quoting *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999)). Double jeopardy is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. *Id.* (citing *Spivey v. State*, 761 N.E.2d 831, 833 (Ind.Ct.App.2002)).

Here, both the offenses of rape and criminal deviate conduct require proof that the victim was compelled by force or the imminent threat of force. IC 35–42–4–1; IC 35–42–4–2. The offense of battery requires proof that the defendant touched the victim in a rude, insolent, or angry manner. IC 35–42–2–1. The evidence at trial showed that Moore ordered C.S. into her bedroom and began to hit and slap her

---

**5.** Moore claims that the present case is distinguishable from the facts in *Ohio v. Johnson* and *Boze* because in those cases, the State objected to the defendant's guilty plea, but in our case no objection was made by the State. *See Ohio v. Johnson*, 467 U.S. 493, 496, 104 S.Ct. 2536, 2539, 81 L.Ed.2d 425 (1984); *State v. Boze*, 482 N.E.2d 276, 277 (Ind.Ct. App.1985). We do not believe that this distinction makes those cases inapplicable to the present case. Here, although the State did not object when Moore pled guilty to battery,

there was no reason for the State to do so. After his guilty plea, Moore did not move to dismiss the remaining charges as the defendants did in *Johnson* and *Boze*. Further, Moore did not raise any double jeopardy concerns resulting from his guilty plea until the present appeal. We therefore conclude that the State's lack of an objection in this case does not allow Moore to plead guilty and use that plea to divest the State of the ability to fully prosecute him for the charged offenses.

on the head and on the legs. He kicked, head-butted, and bit her legs and choked her with his hands, warning her not to scream. This evidence supported his conviction for battery. C.S. testified that, at the end of this beating, Moore forced her pants off and had sex with her while she attempted to push him off of her. *Tr.* at 230. She also testified that sometime the next day Moore forced her to perform oral sex on him and threatened to beat her again if she did not. *Id.* at 251. We therefore conclude that each offense was established by separate and distinct facts. Moore's convictions for battery, rape, and criminal deviate conduct did not violate double jeopardy.

## II. Sentencing Statement

■ Moore argues that the trial court abused its discretion in sentencing him because it failed to provide an adequate sentencing statement when it imposed sentences in excess of the advisory sentences. He contends that the trial court's written sentencing statement did not provide any reasons for selecting the sentence it imposed and that the trial court's oral statement at the sentencing hearing did not discuss how it weighed the aggravating circumstances to arrive at the sentence it imposed.

■ Indiana trial courts are required to enter sentencing statements whenever a sentence for a felony offense is imposed. *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind.2007). The sentencing statements must include "reasonably detailed recitation of the trial court's reasons for imposing a particular sentence," and if the recitation includes a finding of aggravating or mitigating circumstance, it must "identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating." *Id.* The purpose behind this requirement is to: (1)

guard against arbitrary and capricious sentencing and (2) provide an adequate basis for appellate review. *Id.* at 489. On appeal, we consider both the written and oral sentencing statements. *McElroy v. State,* 865 N.E.2d 584, 589 (Ind.2007).

Here, at the sentencing hearing, the trial court gave an extremely thorough explanation of its reasoning for imposing Moore's sentence. The trial court first discussed each of Moore's proposed mitigating circumstances and explained why it did not attribute any weight to them. The trial court then discussed each of the aggravating circumstances that it found and spelled out why it found each to be aggravating and what weight it assigned to each. After finding three aggravating circumstances and no mitigating circumstances, the trial court stated that it found "that the aggravation in this case far outweigh[ed] any mitigation." *Tr.* at 722. It then imposed enhanced, but not maximum, sentences on each conviction, as follows: (1) fifteen years on the Class B felony rape conviction; (2) fifteen years on the Class B felony criminal deviate conduct conviction; (3) two years on the Class D felony criminal confinement conviction; and (4) six years on the Class C felony battery conviction. The sentences for rape and criminal deviate conduct were ordered to run consecutively to each other, with the sentence for criminal confinement to run concurrently to the criminal deviate conduct sentence. The battery sentence was ordered to run consecutively to the other two convictions for an aggregate sentence of thirty-six years. Further, the trial court explained why it did not believe that Moore was a good candidate for probation, namely his previous disregard of court orders by failing to pay fines and committing contempt of court in his past cases. We conclude that the trial court provided an adequate sentencing statement, and it did

not abuse its discretion in sentencing Moore.

### III. Appropriate Sentence

█ Appellate courts may revise a sentence after careful review of the trial court's decision if they conclude that the sentence is inappropriate based on the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Even if the trial court followed the appropriate procedure in arriving at its sentence, the appellate court still maintains a constitutional power to revise a sentence it finds inappropriate. *Hope v. State*, 834 N.E.2d 713, 718 (Ind.Ct.App.2005).

█ Moore contends that his thirty-six-year sentence was inappropriate in light of the nature of the offense and his character. He specifically argues that the trial court mischaracterized his criminal history, which reflected poorly on his character. He claims that, although he had committed some misdemeanors in the past, none of his offenses were "the seriously violent type of offenses that he faced in this case" and that he had never faced time in prison or probation in the past. *Appellant's Br.* at 14. He asserts that, therefore, the imposition of sentences far in excess of the advisory sentences was inappropriate. We disagree.

As to the nature of the offense, the evidence showed that, over the course of several days, Moore confined his girlfriend, C.S., to her apartment and repeatedly and severely beat her by hitting her in the head and hitting, biting, headbutting, and kicking her in the legs. He did this because he thought that C.S. had hugged one of his friends. At the time of the beating, C.S.'s two young children were present in the apartment. Moore also knew that C.S. was almost four months pregnant with his child. Additionally, Moore raped C.S., forced her to perform oral sex, and threatened to kill her

and her two-year old child. As a result of this beating, C.S. suffered a black eye, bruising on her neck and arm, and severe bruising on both of her legs.

As to Moore's character, although he had not ever been convicted of a felony, his pre-sentence report did contain several misdemeanor convictions. These included convictions for disorderly conduct, public drunkenness, malicious mischief, possession of marijuana, and resisting law enforcement. His testimony at the sentencing hearing demonstrated that one of his convictions was actually the result of a fight he had with a friend even though it was not a battery conviction. *Tr.* at 695. Moore also admitted that he had been found guilty of an assault/domestic violence charge that was listed as "pending" in his pre-sentence report; he initially stated that his brother was the victim of this crime, but eventually admitted that the victim was his own mother. *Id.* at 696–97, 701–02. Moore also testified that he had been subject to two discipline actions for fighting while he was incarcerated awaiting trial. *Id.* at 697–98. He was found guilty three times of failure to pay fines and contempt of court and, at the time of sentencing, had three more charges pending of failure to pay fines, failure to appear, and contempt of court. Moore's criminal history demonstrated that he was prone to acting out in a violent manner and to disobeying court orders. In light of the above evidence, we do not believe that Moore's sentence of thirty-six years for his convictions of B felony rape, B felony criminal deviate conduct, C felony battery, and D felony criminal confinement was inappropriate. The trial court could have sentenced him to a maximum of fifty-one years, but sentenced him to significantly less. Moore's sentence was not inappropriate in light of the nature of the offense and his character.

## IV. Cross–Appeal

 The State cross-appeals and contends that the trial court erred when it refused to instruct the jury on rape as a Class A felony, criminal deviate conduct as Class A felony, and criminal confinement as a Class B felony because they were enhanced based upon the same bodily injury, and Moore had already pled guilty to battery enhanced to a C felony based upon the same injury. The State argues that this decision was erroneous as a matter of law because double jeopardy concerns were not implicated "simply by submitting those charges to the jury and having the jury return verdicts on those charges." *Appellee's Br.* at 10. It asserts that Moore may not preclude the State from pursuing verdicts on all of the charged offenses by pleading guilty to one of the offenses. Any double jeopardy issue should have been resolved at the time of sentencing and not before the offenses were submitted to the jury.

 The State appeals a reserved question of law pursuant to IC 35–38–4–2(4) regarding the trial court's decision to not submit the enhanced offenses to the jury. Under the statute, the State may appeal a question of law following a defendant's acquittal. *State v. Lloyd*, 800 N.E.2d 196, 198 (Ind.Ct.App.2003).[6] However, if the trial court's judgment is reversed, the State is barred, on double jeopardy grounds, from trying the defendant again. *State v. Casada*, 825 N.E.2d 936, 940 (Ind.Ct.App.2005). Although the is-

sues addressed in these cases are therefore moot, we address the merits in these situations to provide guidance to the trial courts in future cases. *Lloyd*, 800 N.E.2d at 198.

As previously stated in section I, when a defendant pleads guilty to one of the charged offenses, that guilty plea may not be used "to divest the State of the power to fully prosecute or to determine which charges will, or will not, be pursued." *Boze*, 482 N.E.2d at 279. In the present case, just prior to the trial, Moore pled guilty to battery as a C felony and proceeded to trial on the remaining charges. After the evidence was presented, the trial court notified the parties that it would not instruct the jury on the enhanced offenses because Moore had previously been convicted of the enhancement of "resulting in serious bodily injury" due to his guilty plea and each of the remaining offenses was enhanced based upon the same bodily injury. This action by the trial court deprived the State of its right to fully prosecute Moore for the charged enhanced offenses. At the time when the trial court notified the parties that it would not instruct the jury on the enhanced offenses, no double jeopardy problem existed. Although Moore had previously pled guilty to battery resulting in serious bodily injury, he had not yet been found guilty of any other offense that would cause him to be subject to double jeopardy. The proper procedure would have been to continue the trial by submitting the offenses to the jury as

---

6. The State contends that the trial court's action did not constitute an implied acquittal of the enhanced offenses. "The act of a trial judge in granting a judgment to the defendant, even when he errs in applying the law, acts as an acquittal and bars a second trial." *State v. Goodrich*, 504 N.E.2d 1023, 1024 (Ind.1987) (citing *Smalis v. Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986)). Here, the trial court's decision to not allow the enhanced offenses to be submitted to the jury granted a judgment to the defendant and, therefore, acted as an acquittal. Additionally, under IC 35–38–4–2(4), an appeal by the State may only be taken by an appellate court upon a question reserved by the State, if the defendant is acquitted. Therefore, in order for the State to be able to bring this cross-appeal, the defendant must have been acquitted.

charged, and if Moore was convicted of the enhanced offenses, any double jeopardy problems should have been resolved when judgment was entered on these convictions. This would have allowed the State to pursue a Class A felony conviction that would have remained in effect even after any double jeopardy problems were resolved. *See Pierce v. State,* 761 N.E.2d 826, 830 (Ind.2002) (resolving double jeopardy problem that existed when Class A felony burglary and Class B felony robbery were enhanced due to same injury by reducing lesser robbery conviction to Class C felony and keeping Class A felony burglary conviction intact). The trial court erred when it refused to submit the enhanced charges to the jury based upon double jeopardy concerns.

Affirmed in part and reversed in part.[7]

RILEY, J., concurs.

MAY, J., concurs in result with separate opinion.

MAY, Judge, concurring in result.

Although I concur in large part with the majority opinion, I depart from the majority's reasoning for why the State may not retry Moore for Class A felony rape, Class A felony criminal deviate conduct, and Class B felony criminal confinement.

The State asserts, and I agree, the trial court did not "acquit" Moore of those crimes. *See* Black's Law Dictionary at 24 (7th ed. 1999) (An acquittal is the "legal certification, usu. by jury verdict, that an accused person is not guilty of the charged offense."). Rather, the court declined to

instruct the jury on the enhanced charges because the facts underlying the enhancements to rape, criminal deviate conduct, and criminal confinement—unspecified injuries to C.S.—were the same facts underlying Moore's guilty plea to battery enhanced to a Class C felony. The court was concerned about the double jeopardy implications of Moore being found guilty of additional crimes based on the same injuries, but it expressed no doubt C.S. received the injuries underlying the enhancements. *Cf. Smalis v. Pennsylvania,* 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986) (Fifth Amendment prohibited retrial after a trial court had determined "as a matter of law the State's evidence is insufficient to establish his factual guilt."); *State v. Goodrich,* 504 N.E.2d 1023, 1024 (Ind.1987) (State appealed a directed verdict).[8]

Neither was there an "implied acquittal" by the jury. An implied acquittal is an "acquittal in which a jury convicts the defendant of a lesser-included offense without commenting on the greater-offense." Black's Law Dictionary at 24. Here, the court did not instruct on the enhanced charges, so the jury could not convict Moore of those greater offenses. Therefore, we cannot infer from the jury's verdicts that it believed Moore was innocent. *Cf. State v. Morrison,* 165 Ind. 461, 75 N.E. 968, 969 (Ind.1905) (guilty plea to lesser-included offense was an acquittal of the greater offense).

Because I believe Moore was not acquitted, I cannot agree the State is appealing "a question reserved by the state, [when]

---

7. Although the trial court erred in its action, double jeopardy bars retrial on the charges. *See State v. Lloyd,* 800 N.E.2d 196, 198 (Ind. Ct.App.2003).

8. A directed verdict is a "judgment entered on the order of a trial judge who takes over the

fact-finding role of the jury because the evidence is so compelling that only one decision can reasonably follow or because it fails to establish a prima facie case." Black's Law Dictionary at 1555.

the defendant is acquitted," *see* slip op. at 15 n. 6 (citing Ind.Code § 35–38–4–2(4)).

Nevertheless, I concur in the result because the State has not demonstrated we have jurisdiction over its cross-appeal. "The right of the state to appeal from criminal proceedings is strictly limited to authorization by statute." *State v. Harner,* 450 N.E.2d 1005, 1005 (Ind.1983), *overruled on other grounds by Wright v. State,* 658 N.E.2d 563 (Ind.1995). The State's argument regarding acquittal removed its cross-appeal from the portion of Ind.Code § 35–38–4–2 relied on by the majority, but the State has not provided citation or argument demonstrating it was otherwise authorized to appeal the trial court's decision not to instruct the jury on the enhanced offenses. Therefore, I would dismiss the State's cross-appeal. *See State v. Eakins,* 169 Ind.App. 390, 348 N.E.2d 681, 682 (Ind.Ct.App.1976) (dismissing where State's only explanation of appellate court's jurisdiction was erroneous).