**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH MEER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A04-1204-CR-193 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Thomas A. Cannon, Jr., Judge
Cause No. 18C05-1105-FA-4

**December 14, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Kenneth Meer appeals his convictions for rape, as a Class A felony, and criminal deviate conduct, as a Class A felony, following a jury trial. He presents the following issues for our review:

1. Whether the prosecutor committed misconduct during final argument and whether that alleged misconduct constitutes fundamental error.

2. Whether his convictions violate double jeopardy.

3. Whether the State presented sufficient evidence to support his convictions.

We affirm.

## FACTS AND PROCEDURAL HISTORY

At approximately 4:30 a.m. on April 24, 2011, K.S. was home alone when she heard a knock on the front door to her apartment. When she opened the door, a man subsequently identified as Meer, whom K.S. did not know, asked whether someone other than K.S.[1] was in the apartment, and K.S. responded no. Meer then pushed K.S. and forced his way into her apartment.

Meer forced K.S. onto a couch in her living room, put a knife to her throat, and struggled to remove her shorts. K.S. was able to grab her cell phone and attempted to call someone, but she was unsuccessful before Meer knocked the phone out of her hands. K.S. then found the knife, which Meer had dropped, and she stabbed him. Meer then began choking K.S. K.S. stabbed Meer again, and Meer choked her again. After K.S. had stabbed Meer a third time, Meer choked K.S. until she lost consciousness.

---

[1] Meer appeared to be looking for two people, by name, who did not live in K.S.'s apartment. K.S. testified that she initially believed that Meer had merely chosen the wrong apartment.

2

K.S. regained consciousness and found that she was lying on the floor next to the couch. Meer was performing oral sex on her, and he told her that she could "friend" him on Facebook. Transcript at 170. K.S. asked Meer whether he was going to kill her, and he responded, "No." Id. K.S. asked Meer whether he was going to rape her, and he responded, "No." Id. at 170-71. Meer then proceeded to rape K.S. K.S. was crying and stomping on the floor, trying to get the attention of someone in the downstairs apartment. K.S. then told Meer that she would not tell anyone about the rape if he stopped. Meer then stopped, stood up, and started to get dressed. Before he put his white t-shirt on, he gestured to his abdomen, where he had been stabbed, and said, "Look what you did to me." Id. at 172.

Before he left, Meer asked K.S. whether she had a landline telephone. K.S. replied in the negative. Meer then asked K.S. to describe her car, and he took her cell phone, left the apartment, and left K.S.'s cell phone on her car outside. K.S. waited for Meer to walk out of sight before she left her apartment to retrieve her cell phone. She called a friend who came over and accompanied her to the hospital.

At the hospital, K.S. underwent an examination by a Sexual Assault Nurse Examiner, which included obtaining vaginal and cervical swabs to perform DNA testing. K.S. reported that she had lost consciousness during the attack after Meer had choked her, and she had stab wounds on her knee and left hand. The nurse observed blood on K.S.'s shirt, as well as various areas of her body, including her genitals. An emergency room physician prescribed medications for the prevention of sexually transmitted diseases, as well as an emergency contraception medication.

K.S. had also reported to Muncie Police Officer Ron Miller that she had stabbed her assailant. Officer Miller then learned that Meer had been admitted to the same hospital with stab wounds. Officer Miller found Meer in the trauma unit and asked him what had happened to him. Meer reported that he had been attacked and stabbed by two or three black males.

Muncie Police Detective Robert Scaife arrived and interviewed Meer and K.S. separately. Because Meer fit K.S.'s description of her assailant, Detective Scaife told Meer that he knew he was lying about how he had been stabbed. After Detective Scaife told Meer that he was investigating a sexual assault and asked Meer for a DNA sample, Meer became loud and belligerent. Detective Scaife collected Meer's clothing and belongings, including a knife, and he obtained a search warrant for a blood sample from Meer. Finally, K.S. identified Meer as her assailant from a photo array.

The State charged Meer with rape, as a Class A felony; burglary, as a Class A felony; and criminal deviate conduct, as a Class A felony. Following trial, a jury found Meer guilty of rape, as a Class A felony, and criminal deviate conduct, as a Class A felony, but acquitted him of burglary. The trial court entered judgment accordingly and issued a thorough sentencing statement explaining the rationale for Meer's aggregate forty-year sentence. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Prosecutorial Misconduct

Meer first contends that the prosecutor committed misconduct during closing argument when he made the following remarks:

4

In looking at the forensic evidence, I just want to go over a brief summary of it. The State Police found blood in this case, not surprisingly because the defendant was stabbed, stabbed severely. There was blood on the . . . vaginal cervical swabs, external genital swabs, . . . [and] labia minora and majora swabs. . . .

* * *

The evidence shows us clearly the defendant was stabbed not after sex,[2] not by the TV stand, but that the defendant was stabbed before sex. That's what the forensic [evidence] shows and I'll tell you why. . . . ISP lab found blood on the external genital area, . . . on her labia majora and minora, which are the inner folds of the female vagina, probably most importantly, on the vaginal cervical swab. The swab of the interior of the vagina which (indiscernible) the cervix. That swab proves the defendant's story is a lie. Because the only way to get blood on her inner thighs on her folds of her vagina, the skin folds, labia minora and majora, and, more importantly, in her vagina on her cervix is if they are struggling on the couch, she stabs him and he pulls her to the floor and he inserts his penis and as he is raping her the blood is dripping down and gets pushed in[to] her vagina.

Transcript at 633, 670-71. Meer did not object to those remarks at trial. On appeal, he contends that the prosecutor "misstated the evidence" with regard to the presence of blood in K.S.'s "vaginal area." Brief of Appellant at 13. Meer maintains that the prosecutor committed misconduct and that that misconduct constituted fundamental error. We cannot agree.

In Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006), our supreme court set out the applicable standard of review:

In reviewing a properly preserved claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. Booher v. State, 773 N.E.2d 814, 817 (Ind. 2002). Whether a prosecutor's argument constitutes misconduct is measured by

_____

[2] Meer testified that he and K.S. had consensual sex and that K.S. stabbed him afterwards.

5

reference to case law and the Rules of Professional Conduct. See Mahla v. State, 496 N.E.2d 568, 572 (Ind. 1986). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. Coleman v. State, 750 N.E.2d 370, 374 (Ind. 2001).

When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. Dumas v. State, 803 N.E.2d 1113, 1117 (Ind. 2004); Brewer v. State, 605 N.E.2d 181, 182 (Ind. 1993). If the party is not satisfied with the admonishment, then he or she should move for mistrial. Dumas, 803 N.E.2d at 1117. Failure to request an admonishment or to move for mistrial results in waiver. Id. Where a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim. More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. Booher, 773 N.E.2d at 817; see also Johnson v. State, 725 N.E.2d 864, 867 (Ind. 2000) (A party's failure to present a contemporaneous trial objection asserting prosecutorial misconduct results in waiver of appellate review). Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable and substantial potential for harm." Benson v. State, 762 N.E.2d 748, 756 (Ind. 2002).

On appeal, Meer alleges that "[n]one of the swabs" referenced by the prosecutor during his closing argument, namely, the vaginal cervical swab, external genital swab, and swabs of the labia minora and majora, "bore blood." Brief of Appellant at 15. But that is patently untrue. Heather Crystal, a forensic DNA analyst for the Indiana State Police laboratory, testified in relevant part as follows:

Q:     . . . Let's move on to 48c, the vaginal and cervical swabs. . . .
                              * * *
Q:     And did you test for the presence or absence of blood?
A:     Yes I did.
Q:     And what did you find?

6

A:    I confirmed the presence of blood on one of the 2 swabs and on the remaining swab the presumptive was positive and I could not confirm.[3]

Q:    Looking at the next item, item 48f, the external genital swabs, there were 2 separate external genital swabs, is that correct?

A:    Yes that's correct.

* * *

Q:    48, swab 48f-2, did you detect blood?

A:    Yes I did.

* * *

Q:    Next item 48q, labia minora swabs. Were there 2 swabs?

A:    Yes there were.

Q:    I want to first start with swab 48q-1, did you detect the presence of blood?

A:    Yes I did.

* * *

Q:    Next item 48r, the labia majora swabs, there were 2 swabs of this area as well, is that correct?

A:    Yes.

* * *

Q:    The second swab 48r-2, did that swab or did you find the presence of blood on that swab?

A:    Blood was detected.

Transcript at 403-14 (emphases added).

To the extent Meer contends that the prosecutor's remarks were erroneous because there was no evidence that the blood detected on the swabs was Meer's blood, Meer is correct that Crystal did not testify that the blood detected on the referenced swabs belonged to Meer.[4] But in judging the propriety of a prosecutor's remarks, we consider statements in the context of the argument as a whole. Seide v. State, 784 N.E.2d 974,

---

[3] Crystal testified that she performed two tests on each swab. The first test is called a "presumptive test" and a positive result from that test indicates that "blood may be present." Transcript at 378. If the presumptive test is positive, then she conducts a second test to confirm the presence or absence of blood.

[4] Crystal did testify that Meer's blood was found on the knife handle and a pillow recovered from K.S.'s living room. And there was evidence of seminal fluid matching Meer's DNA on several swabs.

7

977 (Ind. Ct. App. 2003). It is proper for a prosecutor to argue both law and fact during final argument and propound conclusions based on his analysis of the evidence. Id.

The evidence, as a whole, supports a reasonable inference that the blood on the swabs was Meer's. The evidence shows that K.S. had told Detective Scaife that she had stabbed Meer "several times" in the abdomen prior to the rape. Id. at 334. By contrast, K.S. sustained only defensive wounds on her left hand and a small cut on her left knee. And there was no evidence that K.S. was menstruating at the time of the rape. Further, Meer's mother testified that Meer's t-shirt had "blood all over it" after the attack. Id. at 327. In short, whether the blood found on the swabs was Meer's or K.S.'s goes to the weight of the evidence. Meer has not demonstrated that the prosecutor committed misconduct during closing argument. Accordingly, his contention that the prosecutor's remarks constituted fundamental error must fail.

### Issue Two: Double Jeopardy

Meer contends that his convictions for rape, as a Class A felony, and criminal deviate conduct, as a Class A felony, violate double jeopardy principles under both the federal and state constitutions.[5] In Rexroat v. State, 966 N.E.2d 165, 167-68 (Ind. Ct. App. 2012), trans. denied, we set out the applicable law and standard of review as follows:

> Generally, the constitutional protection against double jeopardy under the Federal or Indiana Constitution prohibits a person from being punished twice for the same offense. Our supreme court has explained the purpose of that right:

---

[5] Meer briefly mentions both the federal and state constitutions in the argument section of his brief on appeal, but he fails to articulate a separate analysis under each of the applicable tests.

8

> Prohibitions against double jeopardy protect against: (1) reprosecution for an offense after a defendant has already been convicted of the same offense in a previous prosecution; (2) reprosecution of a defendant after an acquittal; (3) multiple punishments for the same offense in a single trial; (4) reprosecution of a defendant after the conviction has been reversed for insufficient evidence; (5) criminal reprosecution of a defendant in limited circumstances following a previous civil prosecution; (6) reprosecution of a defendant in limited circumstances after a mistrial has been declared.

Richardson v. State, 717 N.E.2d 32, 37 n.3 (Ind. 1999) (citations omitted). Whether convictions violate double jeopardy is a pure question of law, which we review de novo. See Grabarczyk v. State, 772 N.E.2d 428, 432 (Ind. Ct. App. 2002).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides: "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. 5. Double jeopardy protection under the Constitution is evaluated under the "same elements" test set out in Blockburger v. United States, 284 U.S. 299, 304 (1932). That test provides: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact that the other does not." Blockburger, 284 U.S. at 304. . . .

And Article I, Section 14 of the Indiana Constitution prohibits double jeopardy, providing that "[n]o person shall be put in jeopardy twice for the same offense." In Richardson, our supreme court set out a two-pronged "same offense" test for determining double jeopardy violations under the Indiana Constitution. The court held that

> two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Both of these considerations, the statutory elements test and the actual evidence test, are components of the double jeopardy "same offense" analysis under the Indiana Constitution.

9

717 N.E.2d at 49-50 (emphases in original).

Under the actual evidence test,[6] we examine the actual evidence presented at trial to determine whether each challenged offense was established by separate and distinct facts. Moore v. State, 882 N.E.2d 788, 794 (Ind. Ct. App. 2008). To prove a violation, a defendant must show "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." Id. (quoting Smith v. State, 872 N.E.2d 169, 176 (Ind. Ct. App. 2007), trans. denied). Double jeopardy is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. Id.

Here, Meer makes two contentions. First, Meer maintains that the rape and criminal deviate conduct convictions violate double jeopardy because they constituted a single episode of criminal conduct. Second, Meer asserts that the convictions violate double jeopardy "[b]ecause the same means of threat of imminent force—the knife—was used to elevate both offenses to Class A felonies[.]" Brief of Appellant at 19. We address each contention in turn.

**Single Episode of Criminal Conduct**

Meer cites to Curry v. State, 740 N.E.2d 162, 166 (Ind. Ct. App. 2000), trans. denied, in support of his contention that "double jeopardy was found to have been

---

[6] To the extent Meer argues that his convictions violate the federal constitutional prohibition against double jeopardy, Meer cannot prevail given that each offense required proof of a fact that the other did not. See Jewell v. State, 957 N.E.2d 625, 631 n.10 (Ind. 2011) (citing Blockburger, 284 N.E.2d at 304).

10

violated where offenses charged by the State were alleged to have occurred during the same protracted criminal episode." Brief of Appellant at 16. But Meer's reliance on Curry is misplaced. In Curry, the defendant was convicted of criminal deviate conduct, attempted rape, and burglary. On appeal, we held, in relevant part, that there was a "reasonable possibility the jury used the same facts to establish the essential elements of force or injury that were used to enhance all three charges to Class A felonies and Curry was therefore subjected to double jeopardy." Id. at 166. Such is not the case here, where Meer's convictions were enhanced because of his use of a deadly weapon. Our holding in Curry does not support Meer's suggestion that convictions stemming from a single episode of criminal conduct are generally prohibited by double jeopardy.

Regardless, in essence, Meer contends that the convictions violate the actual evidence test. But Meer's convictions, while stemming from events that occurred close in time and at the same location, constitute two separate offenses and do not violate double jeopardy. The State had the burden to prove separate facts in order to prove separate elements for each offense. In particular, to prove rape, as a Class A felony, the State was required to show that Meer knowingly had sexual intercourse with K.S. when K.S. was compelled by force or compelled by the imminent threat of force, while Meer was armed with a deadly weapon, to wit: a knife. See Ind. Code § 35-42-4-1(a)(1). To prove criminal deviate conduct, as a Class A felony, the State was required to show that Meer knowingly caused K.S. to submit to deviate sexual conduct when K.S. was compelled by force or compelled by the imminent threat of force, while Meer was armed with a deadly weapon, to wit: a knife. See Ind. Code § 35-42-4-2(a)(1) and (b)(2).

11

At trial, to prove rape, the State presented evidence that Meer had sexual intercourse with K.S. by force and while wielding a knife. And to prove criminal deviate conduct, the State presented evidence that Meer performed oral sex on K.S. by force and while wielding a knife. Because the evidentiary facts establishing the essential elements of rape only establish several, but not all, of the essential elements of criminal deviate conduct, there is no double jeopardy under the actual evidence test.

**Class A Felony Enhancements**

Again, Meer contends that his convictions also violate double jeopardy because the "same means of threat of imminent force—the knife—was used to elevate both offenses to Class A felonies[.]" Brief of Appellant at 19. But Meer does not direct us to any case law in support of that contention.[7] And, in fact, our courts have expressly held otherwise. In Seide, this court held that no double jeopardy violation occurred when the defendant's use of the same weapon was used to enhance six different convictions. 784 N.E.2d at 979; see also Mendenhall v. State, 963 N.E.2d 553, 571 (Ind. Ct. App. 2012), trans. denied. Likewise, we hold that here, the enhancement of Meer's convictions for rape and criminal deviate conduct to Class A felonies based upon his use of the same knife does not violate double jeopardy.

---

[7] Meer's argument on this issue on appeal is somewhat convoluted. To the extent Meer intended to rely on case law regarding the use of the same bodily injury to enhance two convictions, Meer does not demonstrate the applicability of that case law to the instant case, and his contention must fail. See Seide, 784 N.E.2d at 979 (rejecting defendant's attempt to equate case law regarding double jeopardy violations based on enhancement of two convictions based on the same bodily injury with enhancements based on the use of the same weapon).

**Issue Three:  Sufficiency of the Evidence**

Finally, Meer contends that the State presented insufficient evidence to support his convictions.  When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.  Wright v. State, 828 N.E.2d 904, 905-06 (Ind. 2005).  It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling.  Id. at 906.

Here, Meer's sole contention on appeal is that the "[p]hysical evidence contradicted K.S.'s testimony."  Brief of Appellant at 20.  In particular, Meer directs us to the testimony of Retired Muncie Police Officer Stephen Bell, who testified that Meer's stab wounds were not consistent with K.S.'s testimony.  But Meer's contention is merely a request that we reweigh the evidence, which we will not do.  K.S.'s testimony, along with the extensive forensic evidence, supports Meer's convictions for rape and criminal deviate conduct.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.